# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Michael A. Bacon,

    Plaintiff

v.

Core Civic, et al.,

    Defendants

Case No.:  2:20-cv-00914-JAD-VCF

**Order Screening
Complaint, Severing Claims, and
Resolving Pending Motions**

ECF Nos. 1, 2, 4

Plaintiffs Michael A. Bacon and Pete Polis jointly filed this *Bivens*[1] civil-rights action, primarily claiming that their Eighth and Fourteenth Amendment rights have been violated because conditions of confinement at the private prison where they are incarcerated potentially may expose them to the COVID-19 virus and because inmates at their prison are not being released early to home confinement under the CARES Act.[2]  Bacon and Polis also have filed an emergency motion asking the Court to appoint a liaison to "put them in for home confinement/ halfway house per the CARES Act."[3]  They also ask to add two other inmates—Shannon K. Kane and Steve Pitchford, Jr.—as plaintiffs to help them champion this lawsuit.[4]

Because Bacon is the only plaintiff who has filed an application to proceed *in forma pauperis*, I deem this action his alone and screen Bacon's claims under 28 U.S.C. § 1915A.

---

[1] Although Bacon and Polis have used a form for a 42 U.S.C. § 1983 action, they clearly indicate that this is a "Bivens Action."  ECF No. 1-1 at 1, 2.  Because the defendants in this case are not state employees acting under color of state law, Bacon and Polis clearly could not bring their claims in a § 1983 action.

[2] ECF No. 1-1.

[3] ECF No. 2.

[4] ECF No. 4.

1  Upon doing so, I find that Bacon has not stated a colorable *Bivens* claim and dismiss his

2  complaint without prejudice and with limited leave to amend by July 10, 2020. Because I have

3  promptly screened this action, I deny as moot the emergency motion for expedited disposition.[5]

4  I deny the motion to add Kane and Pitchford as plaintiffs[6] because they did not sign the

5  complaint and because joinder would not be appropriate. I sever Polis's claims from Bacon's

6  claims because I find that joinder of their claims in one action is not appropriate. I direct the

7  Clerk of Court to assign new and separate cases for Polis, Kane, and Pitchford, and I give them

8  until July 10, 2020, to take further action to maintain their claims.

9  **Preliminary Considerations**

10  **A.  Joinder of Plaintiffs**

11  I begin by addressing the question of who may serve as a plaintiff in this lawsuit. Bacon

12  and Polis have jointly submitted one complaint, signed by both of them. That complaint is not

13  signed by either Kane or Pitchford. Under Rule 11(a) of the Federal Rules of Civil Procedure, a

14  plaintiff who is not represented by counsel is required to sign his complaint. Because there is no

15  signed, operative complaint for either Kane or Pitchford,[7] they are not parties in this action.

16  Even if Kane and Pitchford had signed the complaint, I would not permit joinder of their

17  claims with Bacon's or Polis's. A person may be permissibly joined as a plaintiff under FRCP

18

19  ─────────────
   [5] ECF No. 2.

20  [6] ECF No. 4.

21  [7] The complaint seeks class certification in this case. ECF No. 1-1 at 2. I need not address this
   issue at this time, but I note that, because *pro se* litigants have no authority to represent anyone
22  other than themselves, neither Bacon nor Polis may act as an attorney on behalf of any class by
   filing pleadings or otherwise litigating on behalf of a class. *See Simon v. Hartford Life, Inc.*, 546
23  F.3d 661, 664–65 (9th Cir. 2008) (recognizing the pro se prisoner could not bring class action on
   behalf of others); *Welch v. Terhune*, 11 F. App'x 747, 747 (9th Cir. 2001) (unpublished) (holding
   that pro se plaintiff could not prosecute his action as a class action).

20 if (1) he asserts "any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all plaintiffs will arise in the action."[8]  However, under FRCP 21, "the court may at any time, on just terms, add or drop a party" and "may also sever any claim against a party."  Thus, even where the requirements of FRCP 20 are met, a district court should also consider whether permissive joinder of plaintiffs would comport with principles of judicial economy and further fundamental fairness and whether joinder would result in prejudice to either side.[9]  Courts have broad discretion regarding severance.[10]

For purposes of assessing severance, I assume that there is at least one common question of fact arising out of the same occurrence or series of occurrences concerning Bacon and Polis. But even with that, joinder of these men's claims is not appropriate here because it would not promote fairness or reduce inconvenience and delay.  Bacon and Polis are not attorneys, so neither would be permitted to represent the other.  *Pro se* litigants have the right to plead and conduct their own cases personally;[11] they have no authority[12] to represent anyone other than

---

[8] Fed. R. Civ. P. 20(a); *Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 974 (9th Cir. 2015).

[9] *Visendi v. Bank of America, N.A.*, 733 F.3d 863, 870 (9th Cir. 2013); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997) ("Rule 20 is designed to promote judicial economy, and reduce inconvenience, delay, and added expense."); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (holding that, even once Rule 20 requirements are met, a district court must examine whether joinder would comport with principles of fundamental fairness or would result in prejudice to any party); *see also Harmon v. Brown*, 2018 WL 6243246, at *1 (S.D. Cal. Nov. 29, 2018) ("Even if the standard for permissive joinder under Rule 20(a) is satisfied, district courts have the discretion to refuse joinder in the interests of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness.").

[10] *See Coleman*, 232 F.3d at 1297.

[11] *See* 28 U.S.C. § 1654.

[12] *See Cato v. United States*, 70 F.3d 1103, 1105 n.1 (9th Cir. 1995); *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987).

themselves. Therefore, under Rule 11(a) of the Federal Rules of Civil Procedure, each plaintiff would be required to sign every filing in this case. That need alone would likely create delay or unfairness. It is apparent from the complaint that there are multiple units at the prison where Bacon and Polis are incarcerated, and this prison allegedly is a transfer point. Bacon and Polis thus may end up in different units or different facilities. According to the emergency motion, they also have different release dates in the coming year.[13] So it is quite possible that Bacon and Polis would not be in the same location for the duration of the litigation. These facts alone would make it difficult for the plaintiffs to confer and agree on every filing, sign every filing, and do so in a timely manner.

Issues concerning avoiding contact due to the COVID-19 virus might further make it difficult for the plaintiffs to timely and effectively meet and confer even in the immediate short term. Such a situation almost certainly would result in delay, confusion, and inconvenience. It also might result in unfairness to one of the plaintiffs. As courts have recognized, in such circumstances, joinder of multiple prisoner plaintiffs in one action should be avoided.[14]

Further complicating joinder here is the fact that Polis has not paid the filing fee or filed an application to proceed *in forma pauperis*. The Prison Litigation Reform Act expressly requires that each prisoner proceeding *in forma pauperis* pay the full amount of the filing fee or request leave to proceed *in forma pauperis* and submit the affidavit and account statement required by 28 U.S.C. § 1915(a). If I waited to do anything in this case until Polis paid the filing

---

[13] ECF No. 2 at 14.

[14] *See Lewis v. Nevada*, No. 3:13-CV-00312-MMD, 2014 WL 65799, at *3–4 (D. Nev. Jan. 7, 2014); *Carter v. Foulk*, No. C 08-02795 SBA (PR), 2009 WL 839105, at *3 (N.D. Cal. Mar. 30, 2009); *Davis v. United States*, 2007 WL 2225791 (E.D. Cal. July 31, 2007).

fee or applied to proceed *in forma pauperis*, this would cause delay in screening Bacon's

complaint and addressing his emergency motion, resulting in potential unfairness to Bacon.

To prevent delay, inconvenience, and unfairness, I permit only plaintiff Bacon to proceed

in this action, and I sever Polis's claims from this action and instruct the Clerk of Court to

administratively open a separate case Polis, Kane, and Pitchford so that each plaintiff will have

his own case.  Kane and Pitchford must each file his own signed complaint within 30 days of the

date of this order using their own case numbers or I will instruct the Clerk of Court to close their

cases.  Polis, Kane, and Pitchford each must also file an application to proceed *in forma pauperis*

or pay the full filing fee for his action within 30 days of this order, or his case will be dismissed.

**B.** **Bacon's Application to Proceed *In Forma Pauperis* [ECF No. 1]**

Plaintiff Michael A. Bacon applies to proceed *in forma pauperis*.[15]  Based on the

financial information provided, I find that he is unable to prepay the full filing fee in this matter,

so I grant the application.

**Screening Bacon's Claims**

**A.** **Factual allegations**[16]

Bacon's allegations concern policies and conditions related to the virus known as

COVID-19.  Bacon is an inmate at Core Civic's Nevada Southern Detention Center ("NSDC"), a

prison operated by Core Civic, which is a private company that has a contract with the

Department of Justice to house federal inmates for the BOP.  The prison is a "transfer point."[17]

---

[15] ECF No. 1.

[16] These facts are merely a summary of the plaintiff's allegations and are not intended as findings of fact.

[17] ECF No. 1-1 at 3–4.

Count I alleges the following:  There are some people at NSDC "similarly situated" to those in the Bureau of Prisons ("BOP").   According to Attorney General William Barr's directives of April 3, 2020, and March 26, 2020, concerning the CARES Act and the authorization to transfer some federal inmates to home confinement, "Each inmate is unique and each require the same individualized determination we have always made in this context."  The BOP gave a similar directive on April 21, 2020.  Although there are inmates at NSDC who meet the criteria to be considered for home confinement or a residential reentry center, prisoners have been told that Core Civic is not part of the BOP, so they have not been given the benefits of the CARES Act.  "It has been expressed" to the BOP, Core Civic, and the United States Marshal Service that prisoners need a liaison that could help with the process because those at the Core Civic facility are being denied the same "right" as BOP prisoners.  The reply was, "You need to speak with a 'unit team'" and "You have to wait until you are at a designated facility to address the issues with your assigned case manager."

Movement is supposed to be suspended.  Attorneys in multiple states were contacted and one attempted to invoke the CARES Act and Attorney General Barr's memo.  This was sent to the Warden's office on April 20, 2020.  It was not responded to by the Warden, even though the Warden said to have the attorney email him and he would help.  All he did was send it to the corporate attorney and they denied the request, saying that they do not have to comply with the BOP standards or the Attorney General's directive because they are a private company.[18]

Prisons across the county are having a hard time with the rapid growth of COVID-19. Some are setting up quarantine tens on their compounds and prisons are reporting 80–90% of

[18] *Id.* at 5.

their prisoners being infected.[19]  Because "they" will not stop transfers between prisons, COVID-19 "strikes" at NSDC "just like they don't supply protective materials to staff or inmates."[20]

Bacon also alleges that, although the CARES Act allows inmates "to obtain time off [their] sentence by participating in programs," prisoners at NSDC cannot do that because "Core Civic/NSDC" insists that they are not part of the BOP.[21]

Bacon concludes that this conduct violates his rights under the Fourteenth Amendment of the United States Constitution to "Equal protection under the law/due process."[22]

Count II alleges the following:  Core Civic and NSDC have been conveying the message that they are compliant with safe standards by making false claims about measures they are taking regarding matters like screening staff and inmates for COVID-19, prison transfers, the stockpiling and use of various supplies, social distancing, and negative pressure cells.  Core Civic and NSDC have said that COVID-19 is not at the facility, but it is.   The CDC guidelines are not being followed by Core Civic, and though the Director of the BOP sent out a memo on April 21, 2020, with guidelines to be followed, "NSDC" refuses to adhere to them.  "They" say that it is because they are not part of the BOP, yet they get paid by the DOJ.[23]

What is taking place at NSDC is: (1) no soap for five days; (2) a staff member threatened the lives of inmates by stating that if the inmates did not stop complaining about the exposure to COVID-19, she would make a point to come into section G1 and cough on unprotected inmates,

---

[19] Bacon does not allege that NSDC is one of these prisons.

[20] ECF No. 1-2 at 5.

[21] *Id.*

[22] *Id* at 3.

[23] *Id.* at 7.

which she did the next time she came in but "the defendants" are not investigating this incident;

(3) "they" continued transferring inmates from the infected facilities to NSDC and now COVID-19 is there; (4) it was asked that all Core Civic staff and inmates be tested because asymptomatic people have the virus but "they" claim that "they" don't have the test and that the tests are not needed; (5) inmates did not have masks and staff were not wearing them until COVID-19 arrived at NSDC and they started sometimes wearing "non-CDC compliant masks" but do not have "CDC personal protective equipment;" (6) a liaison was requested so that prisoners at NSDC can get the same treatment that BOP inmates get, but the request was denied; (7) as an inmate was leaving Medical, a staff member told the inmate to wear a mask next time; (8) at an inmate/warden meeting, it was said that no movement would be done, but inmates are being moved from infected high-risk areas to low-risk areas such as NSDC without proper screening or protective gear, causing COVID-19 to be at NSDC and endangering everyone there.  Sending prisoners to a BOP prison that is infected is a potential death sentence, but prisoners at Core Civic are not being screened for release.  Because "they" will not stop transfers between prisons, COVID-19 "strikes" at NSDC "just like they don't supply protective materials to staff or inmates."[24]  People at NSDC fear for their lives and question if they will get COVID-19.  This is a valid fear that brings out mental and emotional anxiety and stress.[25]  Plaintiff Bacon alleges that all of this conduct violates his Eighth Amendment rights.[26]

In an addendum at the end of the complaint, Bacon alleges that "they" claim to follow CDC guidelines pertaining to COVID-19 and that all detainees are isolated for 14 days but this is

---

[24] *Id.* at 7–8.

[25] *Id.* at 8.

[26] *Id.* at 8.

a false claim.  This addendum also states:  "Won't allow to see the optometrist so that Mr. Bacon

can have glasses" as "they" claim that he does not qualify for glasses after having him stand on a

line and look at a chart.  "They" also refuse to give him his glasses in his property.  Section F has

been quarantined because of the recent COVID-19 case.  The unit manager said that no staff

from that section could go into other sections, but a staff member came out of that section and

went into section G1.[27]

**B.    Causes of action**

Based on these allegations, Bacon sues Core Civic, Warden Brian Koehn, Director of the

BOP Michael Carvajal, and U.S. Marshal M. Jefferson.[28]  Bacon also appears to be including

John and Jane Does 1-10 as defendants.[29]  Bacon seeks monetary damages for mental and

emotional distress, along with injunctive relief in the form of COVID-19 testing for staff and

inmates and the assignment of a liaison to immediately place those who qualify into home

confinement or a halfway house.[30]

**C.    Screening standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner

seeks redress from a governmental entity or officer or employee of a governmental entity.[31]  In

its review, the court must identify any cognizable claims and dismiss any claims that are

frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary

---

[27] *Id.* at 10.

[28] ECF No. 1-2 at 2–3.

[29] *Id.* at 10.

[30] *Id.* at 9.

[31] *See* 28 U.S.C. § 1915A(a).

relief from a defendant who is immune from such relief.[32]  In addition to the screening

requirements under § 1915A, the Prison Litigation Reform Act (PLRA) requires a federal court

to dismiss a prisoner's claim if it "fails to state a claim on which relief may be granted."[33]

Under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388

(1971), a plaintiff may sue a federal officer in his or her individual capacity for damages for

violating the plaintiff's constitutional rights.[34]  "Actions under § 1983 and those under *Bivens* are

identical save for the replacement of a state actor under § 1983 by a federal actor under

*Bivens*."[35]  To state a claim under *Bivens*, a plaintiff must allege: (1) that a right secured by the

Constitution or laws of the United States was violated and (2) that the alleged violation was

committed by a federal actor.[36]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot

prove any set of facts in support of the claim that would entitle him or her to relief.[37]  In making

this determination, the court takes as true all allegations of material fact stated in the complaint

and construes them in the light most favorable to the plaintiff.[38]  A reviewing court should

"begin by identifying pleadings [allegations] that, because they are no more than mere

conclusions, are not entitled to the assumption of truth."[39]  "While legal conclusions can provide

---

[32] *See* 28 U.S.C. § 1915A(b)(1), (2).

[33] 28 U.S.C. § 1915(e)(2); *accord* Fed. R. Civ. Proc. 12(b)(6).

[34] *Id.* at 389.

[35] *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991).

[36] *See id.*

[37] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[38] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[39] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

the framework of a complaint, they must be supported with factual allegations."[40]  "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[41]  The plaintiff must provide more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action is insufficient.[42]

Although allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers,[43] all or part of a complaint filed by a prisoner may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact.  This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios).[44]  If it is clear from the face of the complaint that any deficiencies could not be cured by amendment, leave to amend is not required.[45]

---

[40] *Id.*

[41] *Id.*

[42] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[43] *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)

[44] *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[45] *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

**D.     Analysis of Bacon's claims**

   *1.     Many of the remedies that Bacon seeks are not available.*

Bacon seeks monetary damages for mental and emotional distress, along with injunctive relief in the form of COVID-19 testing for staff and inmates and the assignment of a liaison to immediately place those who qualify in home confinement or a halfway house.[46]   However, prisoners bringing federal civil rights lawsuits generally may not seek damages for mental or emotional injury that is not connected to physical injury, and Bacon has not adequately alleged any physical harm.[47]   Furthermore, injunctive relief may not be obtained through *Bivens* actions, which are limited to claims for monetary damages against persons in their individual capacities.[48]   A *Bivens* action also is not "a proper vehicle for altering an entity's policy."[49] Thus, Bacon may not use this *Bivens* action to challenge or change any BOP policies or any policies established at NSDC or to require defendants to take any official action, including testing or the assigning of a liaison to place people in home confinement or a halfway home. Because injunctive relief is not available in a *Bivens* action, I must deny Bacon's emergency

---

[46] ECF No. 1-1 at 9.

[47] *Minneci v. Pollard*, 565 U.S. 118, 129 (2012); 42 U.S.C. § 1997e(e).

[48] *Solida v. McKelvey*, 820 F.3d 1090, 1093 (9th Cir. 2016) (holding that a *Bivens* action is inappropriate for claims seeking solely equitable relief against actions by the federal government and explaining that *Bivens* suits are individual capacity suits and thus cannot enjoin official government action); *Valdez v. United States*, 651 F. App'x 626, 627 (9th Cir. 2016) (holding that plaintiff could not obtain release from prison in *Bivens* action but instead had to seek such relief from a writ of habeas corpus).

[49] *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017).

motion for injunctive relief.[50]  And because Bacon does not seek relief that the law allows him to obtain in a *Bivens* action, I must dismiss the complaint.[51]

It is possible for Bacon to amend the complaint to seek a damages remedy that is cognizable in a *Bivens* action, so this dismissal is without prejudice and with leave to amend.  If Bacon chooses to file an amended complaint alleging *Bivens* claims, he must request a remedy that is available in a *Bivens* action.  He also must state a cognizable and colorable claim.  In the event that Bacon wishes to pursue a *Bivens* claim in an amended complaint, I address his substantive allegations below.

Although injunctive relief may not be obtained in a *Bivens* actions, it may be possible for Bacon to identify a different cause of action for seeking injunctive relief.  In some circumstances, plaintiffs may file non-*Bivens* actions for injunctive relief to stop Eighth Amendment violations based on conditions of confinement.[52]  For example, injunctive relief to put an end to an Eighth Amendment violation may be available where a plaintiff states a colorable Eighth Amendment claim, invokes jurisdiction under 28 U.S.C. § 1331, and asks the court to exercise its traditional powers of equity in constitutional suits seeking injunctive relief against federal officers in their official capacity.[53]  If Bacon wishes to pursue such a claim, he must (1) allege facts sufficient to state a colorable ongoing Eighth Amendment claim,[54] (2) sue

---

[50] ECF No. 2.

[51] *Solida*, 820 F.3d at 1096.

[52] *Hodges v. Matevousian*, No. 118CV00790AWIEPGPC, 2020 WL 1139427, at *1 (E.D. Cal. Mar. 9, 2020).

[53] *Id.*; *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally").

[54] The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the health and safety of inmates.  *Farmer*, 511 U.S. at 832.  To challenge the

and identify the person who would be responsible for carrying out any order for injunctive relief, and (2) request particular injunctive relief that is specifically and narrowly targeted to resolving the ongoing Eighth Amendment violation.  Damages would not be available as relief for such a cause of action.

Bacon must also keep in mind that some forms of injunctive relief are not available from this court.  It is clear that Bacon wishes to obtain injunctive relief in the form of an order that would result in his transfer to home confinement.  He appears to believe that he is entitled to such relief under the CARES Act.  Usually, the BOP may "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."[55]  Under the CARES Act, which was enacted in response to the COVID-19 epidemic, "if the Attorney General finds that emergency conditions will materially affect" BOP functioning, the BOP Director may "lengthen the maximum amount of time for which [he] is authorized to place a prisoner in home confinement" under Section 3624(c)(2).[56]  In a March 26, 2020, Memorandum, Attorney General William Barr directed the BOP Director to "prioritize the use of

---

conditions of confinement under the Eighth Amendment, a plaintiff must meet both an objective and subjective test. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).  The objective prong requires a plaintiff to allege facts sufficient to show a condition that is sufficiently serious to form the basis for an Eighth Amendment violation. *Id.*  In the context of a current risk of *future* harm, the plaintiff must allege facts sufficient to show an objectively intolerable risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994).  To demonstrate the subjective element of deliberate indifference to a serious threat to the inmate's safety, the prisoner must allege facts sufficient to show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837.  Thus, mere negligence is insufficient to show a violation of a plaintiff's Eighth Amendment rights. *Id.* at 835–36.  If a court finds that the Eighth Amendment's subjective and objective requirements are satisfied regarding a current and ongoing significant risk of serious harm to future health, it may grant appropriate injunctive relief. *Farmer*, 511 U.S. at 846.

[55] 18 U.S.C. § 3624(c)(2).

[56] Pub. L. 116-136, § 12003(b)(2).

14

your various statutory authorities to grant home confinement for inmates seeking transfer in

connection with the ongoing COVID-19 pandemic."[57]  The March 26 directive was limited

to eligible "at-risk inmates who are non-violent and pose minimal likelihood of recidivism and

who might be safer serving their sentences in home confinement rather than in BOP facilities."[58]

On April 3, 2020, the Attorney General decided that, because of COVID-19, "emergency

conditions are materially affecting the functioning" of the BOP so that the BOP Director now

had authority to grant home confinement to a larger grouper of prisoners.[59]  General Barr

directed the BOP Director to review inmates with COVID-19 risk factors to determine if transfer

to home confinement was appropriate, starting with inmates incarcerated at facilities with large

numbers of COVID-19 infections affecting operations, including FCI Oakdale, FCI Danbury,

FCI Elkton, and similarly situated facilities.[60]  Thus, there is no requirement that a prisoner

request a transfer to home confinement in order to benefit from the Cares Act.

However, the CARES Act does not give any inmate the right to release to home

confinement.  More importantly, **it is the BOP, not courts,[61] who have the authority to

transfer inmates to home confinement.**  So, even if Bacon could show that he had COVID-19

health risk factors and was incarcerated at a facility with a high number of infections, I would not

be able to grant Bacon an injunction directing his transfer to home confinement.

---

[57] March 26, 2020 Memo from the Attorney General, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic, available at* https://www.justice.gov/coronavirus/DOJ response (last visited 4/29/2020).

[58] *Id.*

[59] *See* Memorandum from Attorney Gen. William Barr to Dir. of Bureau of Prisons, Apr. 3, 2020, https://www.justice.gov/file/1266661/download.

[60] *Id.*

[61] *United States v. Carlucci*, No. CR 10-00464-01-KHV, 2020 WL 2527013, at *3 (D. Ariz. May 18, 2020).

It is possible that Bacon is confusing the CARES Act with compassionate release under the First Step Act.  Under the First Step Act of 2018, 132 Stat. 5194, Congress allowed federal inmates to seek compassionate release directly from the district court if the BOP denies, or fails to timely act on, an administrative request for the release.[62]  Defendants may seek sentence reductions under that provision for "extraordinary and compelling reasons."[63]  However, this court could not address the merits of any such request and order a sentence reduction for Bacon because only his original sentencing court may consider such a request.[64]  Thus, if Bacon wishes to seek a sentence reduction for compassionate release, he must seek such a reduction from the court that sentenced him.

### 2. *Analysis of Bacon's Bivens claims*

#### a. *Bivens claims against Core Civic*

Bacon alleges that Core Civic is a private company housing federal inmates.  As a private company, Core Civic may not be held liable in a *Bivens* action as a matter of law.[65]  I therefore dismiss the *Bivens* claims against Core Civic with prejudice because amendment would be futile.

#### b. *Bivens claims against Brian Koehn*

It appears from the complaint that defendant Brian Koehn is an employee of Core Civic.  In *Ziglar v. Abbasi*, the Supreme Court held that courts should be cautious about extending the availability of *Bivens* remedies outside the three previously recognized *Bivens* claims,[66] none of

---

[62] *See* 18 U.S.C. § 3582(c)(1).

[63] *Id.* § 3582(c)(1)(A).

[64] *See id.*; *Bolden v. Ponce*, No. 220CV03870JFWMAA, 2020 WL 2097751, at *2 (C.D. Cal. May 1, 2020).

[65] *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (holding that *Bivens* does not extend to private entities acting under color of federal law).

[66] 137 S.Ct. 1843, 1854–55, 1857–61.

16

which applies here.  *Bivens* actions are not categorically prohibited when the defendant is an employee of a private entity,[67] but "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."[68]  Alternative remedies and a potential *Bivens* remedy "need not be perfectly congruent" for the alternative remedies to prevent the plaintiff from being able to state a cognizable *Bivens* claim.[69]

*Bivens* therefore does not extend to employees of private entities if there is an alternative remedial structure such as tort law, an injunction action, or remedial mechanisms established by the BOP such as the process for review under 28 C.F.R. 542.10 of a federal prisoner's issues concerning confinement.[70]  I note that state tort law generally provides for claims based on negligence and assault.  Thus, where tort actions or injunction actions provide an alternative remedy, courts repeatedly have refused to extend *Bivens* to Eighth Amendment conditions of confinement claims.[71]

---

[67] *Minneci v. Pollard*, 565 U.S. 118, 131 (2012).

[68] *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1858 (2017).

[69] *See Minneci*, 565 U.S. at 129; *Vega v. United States*, 881 F.3d 1146, 1155 (9th Cir. 2018)

[70] *See Minneci v. Pollard*, 565 U.S. 118, 131 (2012) (holding that *Bivens* claim may not be brought against employees working at a privately operated federal prison where the allegedly wrongful conduct is of a kind that typically falls within the scope of traditional state tort law); *Malesko*, 534 U.S. at 74 (declining to apply *Bivens* where inmate in privately operated prison had full access to the remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program as set forth in 28 C.F.R. 542.10); *Vega*, 881 F.3d at 1148 (holding that *Bivens* did not apply because plaintiff had alternative means for relief against private entity's employees through 28 C.F.R. 542.10).

[71] *See, e.g., Ziglar v. Abbasi,* 137 S. Ct. 1843, 1862–63 (2017) (refusing to extend *Bivens* to claim concerning conditions of confinement imposed on hundreds of prisoners where alternative remedies, including injunction actions, existed); *Schwarz v. Meinberg*, 761 F. App'x 732, 734–35 (9th Cir. 2019) (refusing to extend *Bivens* remedy for Eighth Amendment unsanitary cell conditions claim because alternative remedies were available); *Jones v. Shinn*, No. CV 15-00486

Here, it seems very likely that there is an alternative remedial structure available for any claims against Warden Koehn, including tort actions, injunction actions, the Administrative Remedy Program, or a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). However, I cannot definitively conclude that there are alternative remedies available because it is not clear from the complaint what *Bivens* claims Bacon is attempting to bring against this defendant and on what facts.  Bacon repeatedly uses the term "they" in his complaint without alleging conduct by a particular defendant, so it is impossible to tell if the allegations concern Warden Koehn.  I thus dismiss the claims against Warden Koehn without prejudice and with leave to amend.  If Bacon chooses to amend these claims, he must allege true facts sufficient to state a colorable *Bivens* claim against Warden Koehn, including facts sufficient to show a basis for expanding *Bivens* to the pleaded context.  I note that, to be liable for a *Bivens* claim, the *particular* defendant himself must have personally violated the plaintiff's constitutional rights.[72] Thus, a plaintiff in a *Bivens* action must allege facts sufficient to show how each particular defendant violated the plaintiff's rights; alleging that a defendant's subordinate violated the plaintiff's civil rights is not sufficient to state a colorable claim against the defendant.[73]  So, Bacon cannot seek to hold Warden Koehn liable merely because he is the warden.  If there is an alternative remedial scheme available, such as injunction action or a tort action, or if Bacon is challenging a policy, he will not be able to state a cognizable *Bivens* claim.

---

LEK-KJM, 2020 WL 1529354, at *8–10 (D. Haw. Mar. 30, 2020) (holding that *Bivens* did not extend to claim for unsafe shower conditions because alternative tort remedy was available)

[72] *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) (holding that "*Bivens* is not designed to hold officers responsible for acts of their subordinates").

[73] *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

###### c.   *Bivens* claims against Michael Carvajal and Mr. Jefferson

Bacon alleges that Michael Carvajal is the Director of the Bureau of Prisons.  Carvajal therefore is not a private employee.  Bacon alleges that Mr. Jefferson is in charge of NSDC, which is not a BOP prison, but he appears to allege that Mr. Jefferson is a U.S. Marshal and therefore an employee of the federal government.  Although federal employees sued in their individual capacities may be held liable in *Bivens* actions for some civil-rights violations, as discussed above, a plaintiff must allege facts sufficient to show that the particular defendant violated the plaintiff's constitutional rights.

Here, Bacon alleges no facts mentioning either Michael Carvajal or Mr. Jefferson.  Bacon therefore has not alleged facts sufficient to state a colorable *Bivens* claim against either of these defendants.  Although it appears very unlikely that Bacon will be able to state a colorable *Bivens* claim against either of these defendants, I give Bacon leave to amend the claims against these defendants.  If he chooses to amend the claims against Michael Carvajal or Mr. Jefferson, his amended complaint must allege *true facts* sufficient to state a colorable *Bivens* claim against each *particular* defendant.  General, collective, or conclusory allegations will not be sufficient.  Furthermore, neither Michael Carvajal nor Mr. Jefferson may be held vicariously liable for a *Bivens* claim merely because of the position he holds.  If there is an alternative remedial scheme available or Bacon is challenging a policy, Bacon will not be able to state a cognizable *Bivens* claim.

1               **d.**   ***Bivens claims against doe defendants***

2          It appears that Bacon has included John Doe and Jane Doe 1-10 as defendants.[74]  As a

3    general rule, the use of "Doe" pleading to identify a defendant is not favored.[75]  However, courts

4    recognize that there are situations "where the identity of alleged defendants will not be known

5    prior to the filing of a complaint."[76]  Therefore, if a plaintiff adequately describes the Doe

6    defendant so that the identity of that person can easily be identified through discovery <u>and</u> if the

7    plaintiff alleges specific acts by that particular Doe defendant that states a colorable claim

8    against that Doe defendant, then a court later will permit the plaintiff to engage in discovery to

9    attempt to learn the name of that particular Doe defendant.[77]  However, a complaint cannot be

10   served on a Doe defendant.  So once a plaintiff learns the identity of the Doe defendant, the

11   plaintiff would have to move to substitute the person's real name.  A case cannot proceed

12   without a named defendant being served.  Here, Bacon has not alleged facts sufficient to state a

13   *Bivens* claim against any particular Doe defendant.  So I dismiss his claims as alleged against

14   any Doe defendant.

15   **E.    Leave to amend**

16         I dismiss Bacon's *Bivens* claims against Core Civic with prejudice.  And although it

17   appears to be very unlikely that Bacon will be able to state a colorable *Bivens* claim, I dismiss

18   the remaining *Bivens* claims without prejudice and with leave to amend.  Bacon should file an

19   amended complaint with *Bivens* claims only if he believes that he can state a colorable *Bivens*

20   claim.  If he chooses to file an amended complaint, he is advised that an amended complaint

---

[74] ECF No. 1-1 at 10.

[75] *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

[76] *Id.*

[77] *Id.* at 642-43.

replaces the original complaint, so the amended complaint must be complete in itself.[78]  In each

count, he must allege <u>true facts</u> sufficient to show what <u>each</u> defendant did to violate <u>his</u> civil

rights.  His amended complaint must state a cognizable and colorable *Bivens* claim requesting

appropriate damages or must state a colorable non-*Bivens* claim for equitable relief.  **He must**

**file the amended complaint by July 10, 2020.**  If Bacon includes a claim for injunctive relief in

an amended complaint that is based on 28 U.S.C. § 1331 and the court's inherent equitable

powers, rather than based on *Bivens*, he must make that clear in the complaint and he must state a

related underlying constitutional violation.  If Bacon seeks preliminary injunctive relief, he must

file a separate motion for preliminary injunctive relief in addition to a complaint stating a claim

for injunctive relief.

### Conclusion

IT IS THEREFORE ORDERED that this action will proceed with plaintiff Michael A.

Bacon as the sole plaintiff in Case No. 2:20-cv-00914-JAD-VCF.  The claims by Pete Polis are

severed into a separate action.

IT IS FURTHER ORDERED that the "Motion for Judicial Notice," which seeks to add

Shannon K. Kane and Steve Pitchford to this action, **[ECF No. 4] is DENIED**.

IT IS FURTHER ORDERED that:

- Bacon's *Bivens* claims against Core Civic are DISMISSED with prejudice and

  without leave to amend; and

---

[78] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal).

- Bacon's remaining *Bivens* claims are DISMISSED with leave to amend by July 10, 2020.

If Bacon chooses to file an amended complaint, he must write the words "First Amended Complaint" in the caption.  The amended complaint will be screened in a separate screening order, and this process will take several months.  **If Bacon does not file an amended complaint by July 10, 2020, this action will be dismissed for failure to state a colorable claim.**

IT IS FURTHER ORDERED that Bacon's emergency motion **[ECF No. 2] is DENIED** as moot.

IT IS FURTHER ORDERED that **the Clerk of the Court is directed to**:

- FILE the complaint (ECF No. 1-1) in this action;

- Administratively open a new case for Pete Polis; file and docket a copy of the complaint (ECF No. 1-1), a copy of this order, and a copy of the emergency motion (ECF No. 2) in the new Polis case;

- Administratively open a new case for Shannon K. Kane and file a copy of this order in his case;

- Administratively open a new case for Steve Pitchford, Jr. and file a copy of this order in his case;

- Send Pete Polis, Shannon K. Kane, and Steve Pitchford, Jr. each an advisory letter with his new case name and number, a copy of the complaint, a copy of this order, and the approved form application to proceed *in forma pauperis* by a prisoner with instructions;

- Enter a court-generated notice of related cases in each of these new cases; and

- Send a copy of this order to the Finance Division of the Clerk's Office and to the attention of the Chief of Inmate Services for Core Civic, 2190 East Mesquite Ave., Pahrump, NV 89060.

IT IS FURTHER ORDERED that Bacon's application to proceed in forma pauperis **[ECF No. 1] is GRANTED.** Bacon need not pay an initial installment fee or prepay fees or costs or provide security for fees or costs, but he is still required to pay the full $350 filing fee under 28 U.S.C. § 1915, as amended. This full filing fee will remain due and owing even if this case is dismissed, closed, or otherwise unsuccessful.

In order to ensure that Bacon pays the full filing fee, IT IS FURTHER ORDERED that Core Civic must pay to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits to the account of Michael A. Bacon, # 05425-081, in the months that the account exceeds $10.00, until the full $350.00 filing fee has been paid for this action.

IT IS FURTHER ORDERED that Pete Polis, Shannon K. Kane, and Steve Pitchford, Jr. each has until July 10, 2020, to either (1) pay the filing fee or (2) file a complete application to proceed *in forma pauperis*, including the required financial documents, in his individual case. If Polis, Kane, or Pitchford fails to do so, his action will be dismissed without prejudice.

IT IS FURTHER ORDERED that Kane and Pitchford must <u>each</u> file his own signed complaint by July 10, 2020, using his own case number, or his case will be closed.

Dated: June 10, 2020

_____
U.S. District Judge Jennifer A. Dorsey